IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHARLES L. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:12-cv-0681 |
| | ) Senior Judge Haynes |
| MUSIC CITY HOMES, LLC | ) |
| GLEN WHITFIELD, and | ) |
| BOB DAHMS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

Plaintiff, Charles L. Smith, a Tennessee citizen, filed this action under 28 U.S.C. 1332, the federal diversity statute, against the Defendants: Music City Homes, LLC ("Music City"), a Washington corporation, and Glen Whitfield and Bob Dahms, citizens from the state of Washington and the sole shareholders of Music City. Plaintiff asserts Tennessee law claims for breach of contract, unjust enrichment, conversion/embezzlement, and piercing the corporate veil. Plaintiff alleges, in essence, that Defendants materially breached their obligations under a deed of trust and note by failing to maintain insurance on properties named in the deed of trust and by failing to make payments of principal and insurance under the note. Plaintiff also alleges that Defendants Whitfield and Dahms are personally liable to Plaintiff as the sole shareholders of Music City.

Defendants assert counter-claims for fraud, intentional interference with a business contract, and anticipatory repudiation. Defendants allege that they suffered losses because Plaintiff failed to provide adequate property management, including: (1) entering into unauthorized agreements with tenants to extend their leases at below-market monthly rental rates for prolonged lease periods extending from twelve to twenty-four months; (2) failing to ensure that properties were kept clean

to prevent city code violations; (3) failing to enforce fees due from tenants for insufficient checks forcing Music City to incur banking charges without reimbursement; (4) failing to collect rents timely; (5) failing to deposit paid rents timely; (6) failing to enforce tenant leases; (7) permitting felons to be tenants against Music City policy; (8) failing to inspect properties to ensure against damages caused by tenants; (9) failing to promptly evict non-paying tenants so that properties could be leased to provide adequate flow of income from the investment properties; and (10) causing Defendants to incur unnecessary and excessive legal fees and costs as a result. (Docket Entry No. 52 at 9-10). Defendants also allege that the warranty deed contains errors in the street addresses of two of the properties conveyed and this constitutes fraud and renders the contract unenforceable.

In earlier proceedings, the Court denied Whitfield and Dahms' motion to dismiss for failure to state viable claims, concluding that Plaintiffs complaint and attachments thereto presented actionable claims for breach of contract, unjust enrichment, embezzlement, and piercing the corporate veil. (Docket Entry No. 23). The Court also denied Defendants' motion for summary judgment. (Docket Entry No. 43).

Before the Court is the Plaintiff's motion for partial summary judgment (Docket Entry No. 44) against Music City and Whitfield on Plaintiff's breach of contract claim and on all three Defendants' counter-claims for fraud, intentional interference with a business contract, and anticipatory repudiation. Plaintiff contends that the undisputed facts show that the parties entered into a contract and Defendants Whitfield and Music City failed to pay the entire agreed purchase price and that Defendants owe Plaintiff $851,000 on the remaining principal. As to the three Defendants' counter claims, Plaintiff contends that Defendants' fraud claim fails as Defendants neither allege nor show any material misrepresentation made by Plaintiff; that Defendants neither

2

allege nor show that Plaintiff induced any breach in a business relationship between Defendants and any third-party; that the claims for fraud and intentional interference with a business contract are barred by the statute of limitations; and that Defendants neither allege nor show that Plaintiff made a total and unqualified refusal to perform the contract.

In response (Docket Entry No. 52), Defendants contend that the contract was unenforceable and/or Plaintiff committed the first material breach, citing the warranty deed containing errors as to the correct street addresses for two of the 27 properties conveyed and that Plaintiff did not suffer any damages as Plaintiff profited from his dealings with Defendants. As to their counter-claims, Defendants contend that Plaintiff misrepresented that he was acting in conformity with the Defendants' best interests as their agent when Plaintiff made rental agreements without the Defendants' approval and against their rental policies; that Plaintiff's violations of Defendants' rental policies interfered with Defendants' business relationships with their tenants; that Defendants could not have reasonably discovered the extent of their injuries until after Music City's insolvency; and that Plaintiff committed anticipatory repudiation by taking actions contrary to the Defendants' best financial interests that affected Defendants' ability to render payment in full.

For the reasons stated below, the Court concludes that Plaintiff's motion for partial summary judgment on his breach of contract claim against Defendants Music City and Whitfield should be granted because the undisputed facts show that these Defendants failed to pay the purchase price under the terms of the agreement. The Court also concludes that Plaintiff's motion for partial summary judgment should be granted as to all of the counterclaims asserted by Defendants Music City, Whitfield and Dahms because these Defendants failed to present any evidence establishing the elements of their claims for fraud, intentional interference with a business contract, and anticipatory

3

repudiation. The Court also concludes that Defendants' claims for fraud and intentional interference with a business contract are barred by Tennessee's three-year statute of limitations period, Tenn. Code Ann. § 28-3-105.

## A. FINDINGS OF FACT[1]

Plaintiff owned twenty-seven properties in Davidson County, Tennessee. (Docket Entry No. 1, Complaint at ¶ 7). On November 7, 2006, Plaintiff and Whitfield entered into a purchase and sale agreement whereby Plaintiff agreed to sell to Whitfield the twenty-seven properties for $2,430,000. (Docket Entry No. 49, Defendants' Response to Plaintiff's Statement of Undisputed Facts, at ¶ 1). Under the terms of the purchase contract, Whitfield agreed to make a down payment of $430,000 and to finance the remaining balance under a deed of trust note. Id. at ¶ 3; Docket Entry No. 1-1, Purchase Contract. On or around December 4, 2006, Whitfield formed Music City. Id. at ¶ 4.

On January 16, 2007, Music City executed a Deed of Trust Note (the "Note") in favor of Plaintiff for the outstanding balance on the properties. Id. at ¶ 5; Docket Entry No. 1-2, Deed of Trust Note. Under the terms of the Note, Music City agreed to pay Plaintiff the principal sum of

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-252 (1986), particularly when there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Many of Defendants' disputes to Plaintiff's Statement of Undisputed Material Facts (Docket Entry No. 49) do not contain any citations to the record as required by Local Rule 56.01(c). Defendants' Additional Concise Statement of Undisputed Material Facts also contains a number of asserted facts without any citations to the record as required. (Docket Entry No. 50). The Court will not consider any of Defendants' facts that are not supported by a citation and will accept Plaintiffs' statements of undisputed facts where Defendants' objection are without a citation to the record. The Court concludes that there are not any material factual disputes. Thus, this section constitutes findings of fact under Fed. R. Civ. P. 56.

$2,000,000 with interest over 24 consecutive months. The entire principal was to be paid on February 1, 2009. (Docket Entry No. 1-2). Repayment of the Note was secured by the Deed of Trust that also required Music City to make the payments of principal and interest and to maintain insurance on the properties. (Docket Entry No. 49, at ¶ 6; Docket Entry No. 1-3, Deed of Trust).

Two of the properties' addresses on the warranty deed were incorrectly listed as 624 Benzing Road, Antioch, Tennessee 37013 and 100 Lane Wood Court, Nashville, Tennessee 37211, instead of 516 BenZing Rd. and 4312 Hopewood Dr., Nashville, Tennessee, respectively. (Docket Entry No. 50-3 at 1, 5; Docket Entry No. 56, Smith Declaration at ¶ 4). Yet, the legal descriptions, including the lot numbers, map and parcel identification numbers, book and page number of prior conveyances, and plat references, correctly described 516 Benzing Rd. and 4312 Hopewood Dr., Nashville, Tennessee. (Docket Entry No. 56, Smith Declaration at ¶ 5, Exhibit 1 at 6-7). Defendants received and accepted rent for these two properties for the duration of their ownership. Id. at ¶ 7.

Under the Agreement, Plaintiff agreed to manage the properties for at least one year after the closing date. (Docket Entry No. 49, at ¶ 16). After the contractual one year period expired, Defendants acknowledged in writing that Plaintiff had "given [Defendants] more help than [Plaintiff was] obligated to" and requested that Plaintiff continue to collect rents into December 2008 until Defendants installed a new property management company in January 2009. Id. at ¶ 17; Docket Entry No. 44-6 at 2.

In their affidavits, Whitfield and Dahms state that "[o]n or about January 2009, Music City Homes discovered that rents being paid by tenants were below the average rents for similar properties in the same or similar areas, and that [Plaintiff] had agreed to permit certain tenants to

5

continue to pay below-average rents for extended lease periods." (Docket Entry No. 52-9, Whitfield Affidavit at ¶ 9; Docket Entry No. 52-10, Dahms Affidavit at ¶ 9). Whitfield and Dahms also state that, following Plaintiff's resignation as property manager, Music City Homes discovered "[Plaintiff] had entered into agreements with numerous tenants providing tenants with guaranteed extended leases and/or monthly rents for extended periods of time to last from one (1) to five (5) years." (Docket Entry No. 52-9, Whitfield Affidavit at ¶ 8; Docket Entry No. 52-10, Dahms Affidavit at ¶ 8). Defendants do not submit documents to support these assertions. In a letter dated January 26, 2009, to Plaintiff, Whitfield states:

> I wanted to write and say thanks from myself and Bob Dahms for meeting with us and for agreeing to modify the terms of our payment to you. I also want to express our thanks and appreciation for all the diligence and effort to manage these houses and save us money while maintaining the properties. I don't know how we could have done it without you. Hopefully the new managers will be up to the task. Please let us know if you see any problems in that area. I hope we can maintain our friendship with you over the coming months and years.

(Docket Entry No. 44-8).

A week later, on February 2, 2009, Whitfield sent another letter to Plaintiff referring to Plaintiff's modification of the loan and Plaintiff's extended time as property manager:

> Thank you for the offer of modification of our loan. We are obligated to you and we will agree to accept this extension. ...
>
> We did overrun on your management contract time. And again I made some unspoken guesses about how things were. When the houses didn't sell, I thought I would need to find a replacement for you. The first people I talked to weren't acceptable. I thought you were comfortable remaining involved and I hated to spend money on management that would not be as good as you. You made it clear in November [2008] that this had to end and we have now found a manager I feel good about. ...

6

(Docket Entry No. 44-9). In another letter dated February 10, 2011, sent to Plaintiff, Whitfield stated, "Bob [Dahms] and I do appreciate that you have been a man of your word and we want to continue with the business relationship. ..." (Docket Entry No. 44-10).

Upon Defendants' request, Plaintiff granted multiple extensions of the Note, making the Note due and payable on or about July 1, 2011. (Docket Entry No. 44-4, Smith Declaration at ¶ 7). As of May 2011, Defendants had only paid $779,000 (the $430,000 down payment plus $349,000 from the sale of five properties) towards the principal balance, thus, owing $1,651,000 towards the principal. (Docket Entry No. 49 at ¶¶ 9, 12; Docket Entry No. 44-4 at ¶¶ 4-5; Docket Entry No. 56, Smith Declaration at ¶ 3). Defendants did not make any payments after June 2011. (Docket Entry No. 44-4, Smith Declaration at ¶ 6). In a letter to Plaintiff dated June 21, 2011, Whitfield stated, "We do appreciate your patience and help with the effort to make these properties a fruitful, long term investment." (Docket Entry No. 44-11).

On October 14, 2011, after giving Defendants proper notice of default and foreclosure and publishing notice of sale, the Trustee conducted a foreclosure sale of the properties. (Docket Entry No. 49 at ¶ 10). Plaintiff was the only bidder present at the foreclosure sale and purchased the properties for $800,000. Id. at ¶ 11. The remaining principal amount owed by Defendants is $851,000. (Docket Entry No. 44-4, Smith Declaration at ¶ 9).

## B. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as

the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex

Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873

F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court

explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment
> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories,
> and admissions on file, together with the affidavits, if any, show that there is no
> genuine issue as to any material fact and that the moving party is entitled to a
> judgment as a matter of law." By its very terms, this standard provides that the mere
> existence of some alleged factual dispute between the parties will not defeat an
> otherwise properly supported motion for summary judgment; the requirement is that
> there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only
> disputes over facts that might affect the outcome of the suit under the governing law
> will properly preclude the entry of summary judgment. Factual disputes that are
> irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined

a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational

trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita

Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery.

Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the

party opposing the motion must make an affirmative showing of the need for additional discovery

after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57

(6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir.

1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be

granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

> It is likewise true that:
> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the

hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

11

1.      Complex cases are not necessarily inappropriate for summary judgment.

2.      Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3.      The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4.      This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5.      A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6.      As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.      The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.      The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9.      The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10.     The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

As to Plaintiff's breach of contract claim, under Tennessee law, "[t]he essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." Arc LifeMed, Inc. v. AMC-Tennessee, Inc., 183 S. W.3d 1, 26 (Tenn. Ct. App. 2005) (citation and quotation marks omitted); Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship, 79 F.3d 496, 514 (6th Cir. 1996). Defendants argue that the errors in two street addresses in the deed renders the parties' contract unenforceable and/or constitutes breach by Plaintiff.

Instruments that convey an interest in real property must include a description of the property transferred. ABN Amro Mortgage Group, Inc. v. Southern Security Federal Credit Union, 372 S.W.3d 121, 127 (2011) (citing Tenn. Code § 66-5-103). A deed "must designate the land intended to be conveyed with reasonable certainty." Phoenix Mutual Life Ins. Co. v. Kingston Bank and Trust Co., 112 S.W.2d 381, 382 (Tenn. 1938). "'If part of the description is proved inconsistent on being applied to the premises, it does not vitiate the deed if a sufficient part of the description remains for purposes of identification or where the grantor's intent is apparent.'" ABN Amro Mortgage Group, 372 S.W.3d at 127 (quoting 26A C.J.S. Deeds § 51 (2011)). "[I]n determining the question of title,

13

based upon the description of the property, the generally accepted rule is that if the instrument describes it in such manner that it can be located and distinguished from other property, it is good." Wallace v. McPherson, 214 S.W.2d 50, 53 (Tenn. 1947). "[W]ith respect to executed contracts conveying real property, the courts have been extremely liberal in construing the description with a view of determining whether it is sufficiently definite and certain to identify the land and make the instrument operative as a conveyance, and it is said to be a broad general principle 'that a deed will not be declared void for uncertainty in description if it is possible by any reasonable rules of construction to ascertain from the description, aided by extrinsic evidence, what property is intended to be conveyed.'" Sheffield v. Franklin, 222 S.W.2d 974, 978-79 (Tenn. Ct. App. 1948) (citation omitted).

Here, Defendants do not dispute that the legal descriptions, including the lot numbers, map and parcel identification numbers, book and page number of prior conveyances, and plat references, correctly described the two properties. Under Tennessee law, such description is sufficient in distinguishing the property conveyed. While the two properties' addresses were mislabeled, the correct properties were properly conveyed to Defendants pursuant to the purchase agreement. Moreover, Defendants received and accepted rent from tenants residing at the properties. Defendants fail to provide evidence that they were harmed by this scrivener's error. The Court concludes that this mistake does not invalidate the parties' contract.

Defendants also argue that the Plaintiff is not entitled to damages for any alleged breach of contract because he is in a better position than he was prior to the entry of the contract and is in a better position than he would have been had the contract been fully performed. The proper measure of damages in Tennessee is described as follows:

14

The primary purpose of assessing damages in breach of contract cases is to put the non-breaching party in the same position the party would have been in had the contract been performed. See Lamons v. Chamberlain, 909 S.W.2d 795, 801 (Tenn. Ct. App.1993); Hennessee v. Wood Group Enters., Inc., 816 S.W.2d 35, 37 (Tenn. Ct. App.1991). The law's aim is not to restore the party to the position it would have been in had there never been a contract but rather to give the non-breaching party the benefit of its bargain. See 3 Dan B. Dobbs, Law of Remedies § 12.2(1), at 23 (2d ed.1993). The normal measure of that expectancy value is the non-breaching party's cost incurred in getting a substitute performance. See Dobbs, Law of Remedies § 12.2(1), at 25.

Duffy Tool & Stamping, Inc. v. Bosch Auto. Motor Sys. Corp., No. M1997-00144-COA-R3CV,

2000 WL 122225, at *9 (Tenn. Ct. App. Feb. 1, 2000).

Here, the Note required Music City to pay Plaintiff the principal sum of $2,000,000. After application of the $800,000 paid at foreclosure, the $430,00 from the down payment, and the $349,000 received from the sale of the five properties, the principal balance under the Note is $851,000. Defendants Whitfield and Music City owe Plaintiff $851,000 in principal, in addition to interest, as provided for in the contract. This amount represents the sum Plaintiff would have received if Defendants had fully performed under the Agreement.

As to Defendants' counterclaims, under Tennessee law, the elements of fraud are: "(1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation, and (4) the requirement that the misrepresentation involve a past or existing fact." Kincaid v. SouthTrust Bank, 221 S.W.3d 32, 40 (Tenn. Ct. App. 2006) (citing Dobbs v. Guenther, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992) (citations omitted)). Tennessee law also provides that, "[a] claim of fraud is deficient if the complaint fails to state with particularity an intentional misrepresentation of a material fact." Id. at

41. "To pass the particularity test, the actors should be identified and the substance of each allegation should be pled." Id.

Plaintiff contends that Defendants only make a vague allegation that Plaintiff led them to believe he was working in Defendants' best interest when actually he was not. Plaintiff contends that Defendants failed to present any evidence of any misrepresentation or false statement, or that Defendants detrimentally relied on any alleged representation. Plaintiff also contends that Defendants' fraud claim is barred by the statue of limitations.

In their response, Defendants assert the following:

> The misrepresentation alleged and that the Plaintiff perpetrated was that he was acting in conformity with the Defendants' best interests as the Defendants' agent and on behalf of Music City Homes, L.L.C., when in truth the Plaintiff made rental agreements without the Defendants' approval and against the Defendants' rental policies. The Defendants' reliance on the Plaintiff's misrepresentation led to the insolvency of Music City Homes L.L.C. and the loss of the Defendants' investment in the remaining properties, which was the Plaintiff's fraudulent intent and scheme.

(Docket Entry No. 52 at 13). Defendants also assert that "[t]hey could not have reasonably discovered the extent of their injuries until after the insolvency of Music City Homes, L.L.C. occurred." Id. at 15.

In Tennessee, the appropriate statute of limitations for fraud claims is three years. Tenn. Code Ann. § 28-3-105; Mackey v. Judy's Foods, Inc., 867 F.2d 325, 329 (6th Cir. 1989). A claim accrues and the three-year limitations period commences "when the plaintiffs discovered their injury or through 'the exercise of reasonable care and diligence, it should have been discovered.'" Mackey, 867 F.2d at 328 (quoting McCroskey v. Bryant Air Conditioning Co., 524 S.W.2d 487, 491 (Tenn.1975)). A plaintiff cannot wait to file suit until he or she knows every injurious effect or consequence of the wrong. Ameraccount Club, Inc. v. Hill, 617 S.W.2d 876, 878 n. 1 (Tenn. 1981).

Defendants' fraud claim arises from Plaintiff's work as Defendants' property manager that ended, at the latest, in January 2009. Without submitting any evidence, Defendants allege, in essence, that Plaintiff, in unspecified instances, at unspecified times, and under unspecified circumstances, leased the properties to unfit tenants or at below market rents. Defendants do not identify any specific leases or how much "below market" rates the leases allegedly were. Nor do Defendants explain when their insolvency occurred or how they learned of Plaintiff's alleged bad acts at that time. Moreover, Whitfield's affidavit contradicts Defendants' assertion that they were unable to discover Plaintiff's alleged bad acts until at the time of insolvency. Whitfield states that "[o]n or about January 2009, Music City Homes discovered that rents being paid by tenants were below the average rents for similar properties in the same or similar areas, and that [Plaintiff] had agreed to permit certain tenants to continue to pay below-average rents for extended lease periods." (Docket Entry No. 52-9, Whitfield Affidavit at ¶ 9). Thus, Defendants were on actual notice of any alleged facts as the bases for their fraud claim no later than January 2009. Defendants did not file their counterclaims until August 30, 2012 (Docket Entry No. 17), well after they should have been aware of the bases for their fraud claim. Thus, the Court concludes that Defendants' fraud claim is barred by Tennessee's statute of limitations.

Moreover, Defendants fail to cite any evidence that Plaintiff made any misrepresentations of a material fact to Defendants or that Defendants suffered an injury caused by reasonable reliance on such representation. Defendants rely on vague and general allegations that Plaintiff led them to believe he was working in their best interest when he was not. Defendants fail to present any evidence in support of their fraud allegations. For these additional reasons, the Court concludes that Defendants' fraud claim fails.

As to Defendants' intentional interference with a business relationship claim, the Tennessee Supreme Court adopted the tort of intentional interference with business relationships, namely, that liability should be imposed upon an interfering party provided that the plaintiff can prove the following:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's *improper motive or improper means*; and finally, (5) damages resulting from the tortious interference.

Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002) (internal citation and footnotes omitted) (emphasis in original).[2]

Defendants allege that Plaintiff intentionally interfered with their business relationships by: (1) permitting tenants to stay without paying rent; (2) allowing felons to be tenants in violation of Defendants' policies; (3) failing timely to collect rents and/or make timely deposits of rents; (4) agreeing to below-market rents for extended lease periods without authorization; and (5) causing Defendants to incur unnecessary and/or excessive legal fees.

Defendants' claim for intentional interference with business relationships arises from the same alleged facts as the bases for their fraud claim. As with the fraud claim, this claim is also

---

[2]Tennessee Code Ann. § 47-50-109 also provides:

It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

barred by the three-year statute of limitations as Defendants should have known of the terms of the alleged leases entered into by Plaintiff through reasonable care and diligence no later than January 2009 when Plaintiff ceased managing the properties. See Tenn. Code Ann. § 28-3-105; Smith v Rosenthal Collins Group, LLC, 340 F. Supp. 2d 860, 863–64 (W.D. Tenn. 2004) (applying the three-year limitations period of Tenn. Code Ann. § 28-3-105 to claims for statutory procurement of breach of contract, tortious interference with contract, and tortious interference with business relationship).

Moreover, Defendants fail to present any evidence to prove any of the elements of this claim. Defendants fail to show that Plaintiff interfered with or procured the breach of any lease or relationship between Defendants and any third-party. Even if Defendants were not pleased with Plaintiff's performance as their property manager, and even if Plaintiff violated their policies, Defendants do not allege that Plaintiff caused a breach or termination of a business contract with any third-party.

For these reasons, the Court concludes that this claim fails.

As to Defendants' anticipatory repudiation claim, under Tennessee law, such a claim is established where:

> a party "commit[s] a voluntary act which renders the party unable or apparently unable to perform the contract," or when "the words and conduct of the contracting party ... amount to a total and unqualified refusal to perform the contract. ..." When a repudiation occurs before the time that a contract requires a party to perform, the repudiating party has committed an "anticipatory repudiation" or an "anticipatory breach" of the contract.

UT Med. Grp., Inc. v. Vogt, 235 S.W.3d 110, 120 (Tenn. 2007) (citations omitted).

Defendants allege that Plaintiff anticipatorily repudiated/breached his contract by taking actions contrary to Defendants' financial interests that rendered them unable to render payment in full. As examples of such conduct, Defendants allege that, rather than evicting tenants who tendered bad checks or requiring those tenants to pay in the future via certified funds/money order, Plaintiff repeatedly accepted the offending tenants' personal checks that were returned for insufficient funds.

Yet, Defendants fails to present any evidence that demonstrates that Plaintiff totally and unqualifiedly refused to perform his obligation under the contract or that Plaintiff rendered Defendants unable to perform the contract. The record reflects that in November 2008 Defendants acknowledged that Plaintiff agreed to manage the properties for longer than he was obligated and requested that he continue to collect rents until Defendants installed a new property management company in January 2009. There is not any proof of a total and unqualified refusal by Plaintiff to perform the contract. Plaintiff performed all of his contractual duties when he conveyed the properties to Defendants and completed his property management at the end of 2008. The undisputed material facts demonstrate that for over two and one-half years after Plaintiff ceased managing the properties, Defendants' conduct demonstrates that they still considered themselves bound by the Agreement as they continued to make payments toward the Note, they continued to request modifications and extensions of the Agreement, they extolled Plaintiff for his honesty, they expressed their desire to continue with their business relationship with him, and they thanked him for his effort to make the properties "fruitful."

Accordingly, the Court concludes that Defendants lack proof that Plaintiff committed an act that rendered Defendants unable to perform their contract or that Plaintiff's words and conduct amounted to a total and unqualified refusal to perform the contract.

## C. CONCLUSION

For these reasons, the Court concludes that Plaintiff's motion for partial summary judgment (Docket Entry No. 44) should be granted on his breach of contract claim and on all of the counterclaims asserted by Defendants Music City Homes, Whitfield and Dahms.

**ENTERED** this the 23ʳᵈ day of February, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge

21